**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

RUBY WALKER WADLEY and JACEE
WALKER, in their individual
capacities and as anticipated
administrators of the estate
of Freddie Walker,

    Plaintiffs,

        v.

TYLER MAY and ZAKIA LUKE,

    Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MAR 16 2026

FILED

CV 125-172

## O R D E R

Before the Court is Defendants Tyler May and Zakia Luke's motion to dismiss. (Doc. 4.) For the following reasons, the Defendants' motion is **GRANTED**.

## I. BACKGROUND

For purposes of this motion to dismiss, the allegations in Plaintiffs' complaint (the "Complaint") are taken as true. See Powell v. Lennon, 914 F.2d 1459, 1464 (11th Cir. 1990). On July 27, 2023, Freddie Walker's family called 911 for medical assistance because Walker, who suffers from schizophrenia and hypertension, was having a mental health crisis. (Doc. 1, at 1, 3.) Walker's brother told the operator that Walker "had a nerve problem and that he gets like this when he doesn't take his medicine." (Id.

at 3 (internal quotations omitted).)  After the 911 call, emergency medical technicians ("EMTs") arrived at Walker's home and tried to convince him to come with them to the hospital.  (Id. at 4.)  The EMTs called the Burke County Sheriff's Office ("BCSO"), and two BCSO deputies, Defendants, arrived shortly.  (Id.)  At this point, Walker's family and the EMTs were attempting to put Walker in his brother-in-law's car to be transported to the hospital.  (Id. at 4-5.)  The EMTs informed Defendant Luke that Walker was schizophrenic and off his medications and they were "trying to get him to peacefully go to the hospital with his brother-in-law." (Id. at 4.)

While Walker was sitting in the car at his house, Defendants repeatedly commanded Walker not to get out, to put on his seatbelt, and used physical force to restrain Walker in the car.  (Id. at 5.)  Nonetheless, Walker got out of the car and began moving toward Defendant May[1], and Defendant Luke tased Walker.  (Id. at 6.) Walker stopped moving and was not exhibiting any resistance.  (Id.) Then, Defendant May tased Walker in the chest area, causing Walker "to fall flat on his back on the ground with full-body neuromuscular incapacitation."  (Id.)  When Walker "regained the ability to move, he flailed his leg," and Deputy May tased Walker

---

[1] Defendants contend that after Walker got out of the car, he "reared back to punch [Defendant] May, and charged at him" leading to Defendant Luke firing her taser.  (Doc. 4, at 4.)  Further, Defendants state that Walker "appeared to square up on a nearby EMT in a threatening manner" after Defendant Luke's tase and before Defendant May's first tase.  (Id.)

2

a second time.  (Id.)  Walker struggled to his feet, was visibly unsteady, and was losing consciousness.  (Id. at 7.)  Walker started to get up and then collapsed back to the ground.  (Id.)  Defendant Luke asked the EMTs if Walker had any other medical issues, and the EMTs answered that Walker had hypertension, "a heart condition that makes a person more susceptible to cardiac arrest if tased in the chest area."  (Id.)  Walker struggled to his feet again, and "the second he made it up," Defendant May tased him a third time.  (Id.)  Walker fell to the ground and was fully incapacitated.  (Id.)  Defendant Luke asked, "that's what three [rounds]?"  (Id.)  Then she said, "you need to let him ride the whole five you don't stop" to Defendant May.  (Id.)  EMTs approached Walker and were rolling him to his stomach when Defendant May tased Walker a fourth time, believing he tried to hit another deputy.  (Id. at 7-8.)  Everyone at the scene "turned in shock," and Defendant Luke exclaimed to Defendant May, "what are you doing?!"  (Id. at 7.)  Walker was "unresponsive" and "died soon after."  (Id. at 8.)

On July 25, 2025, Plaintiffs filed the Complaint.  (Doc. 1.)  Plaintiffs allege claims for (1) excessive force; (2) illegal seizure/excessive force; (3) battery; (4) breach of ministerial duty; (5) intentional infliction of emotional distress; (6) expenses of litigation; (7) and punitive damages.  (Id. at 9-20.)  On August 26, 2025, Defendants filed a motion to dismiss.  (Doc.

3

4.)  On September 22, 2025, Plaintiffs responded.  (Doc. 11.)  On October 20, 2025, Defendants replied.  (Doc. 15.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  The Court need not accept the pleading's legal conclusions as true, only its well-

4

pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

Defendants argue Plaintiffs' claims for excessive force, illegal seizure/excessive force, battery, breach of ministerial duty, intentional infliction of emotional distress, expenses of litigation, and punitive damages against Defendant Luke should be dismissed, and Plaintiffs' claims for illegal seizure and breach of ministerial duty against Defendant May should be dismissed. (Doc. 4, at 5.) The Court addresses each claim in turn.

### A. Excessive Force and Illegal Seizure

Defendants argue Plaintiffs' excessive force claim fails against Defendant Luke because she is entitled to qualified immunity, did not use excessive force, did not violate Walker's clearly established rights, and cannot be liable for Defendant May's use of force. (Id. at 6-14.) Plaintiffs claim not only that Defendant Luke's force was excessive, but it was also a constitutional violation because it occurred during an illegal seizure by Defendants. (Doc. 11, at 5.) As such, the Court

5

addresses Count I for excessive force against Defendant Luke and Count II for illegal seizure/excessive force against Defendants together.

### 1. Legal Standard

To establish a Fourth Amendment excessive force claim, Plaintiffs must allege sufficient facts to show Defendant Luke's conduct was objectively unreasonable. Graham v. Connor, 490 U.S. 386, 395 (1989). The Court must judge the officer's actions from the perspective of a reasonable officer at the scene. Id. at 396. To determine if the force used was reasonable, the Court considers: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alterations and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or

harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). In this case, Defendant Luke was responding to a 911 call for emergency services when the alleged violation occurred, a quintessential job-related function for a deputy. (Doc. 1, at 4.) There is nothing in the Complaint that suggests Defendant Luke was not acting within her discretionary authority during the encounter, nor do Plaintiffs dispute that Defendants acted within their discretionary duties during the events at issue.

7

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (citation omitted). Accordingly, the Court must turn to the Complaint to see if Plaintiffs alleged sufficient facts to demonstrate that Defendant Luke is not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016). Courts must utilize a two-part framework to evaluate the qualified immunity defense. First, as a threshold inquiry, the Court addresses whether Plaintiffs' allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the Plaintiff, show a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id.

In § 1983 suits, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998), *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); accord Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995). Because of this, the Court analyzes these defenses together.

8

To protect public officials from meritless claims, the complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (citation omitted).[2]  Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right."  Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007) (citation omitted).

The first step of the qualified immunity analysis is to determine whether Plaintiffs' facts, taken in the light most favorable to Plaintiffs, show that Defendant Luke's conduct violated Walker's Fourth Amendment protection against unreasonable searches and seizures.  The Court finds it does not.

2. Defendant Luke's Use of Force

Defendants argue Defendant Luke's attempt to tase Walker was not excessive force because she "fired her taser at Walker when he charged at and attempted to punch [Defendant] May."  (Doc. 4, at

---

[2] See also Randall, 610 F.3d at 709-10 ("Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal.  A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth - legal conclusions must be supported by factual allegations.").

9

9.) Defendants claim "[a] reasonable officer in [Defendant] Luke's position would believe that she and [Defendant] May were at risk of serious harm." (Id.) Defendants argue "Walker was agitated and violent" towards Defendant May, so Defendant Luke's single taser use "was reasonable and proportionate to the threat she [and Defendant] May faced." (Id. at 10.) Defendants cite Draper in support, where an officer tased a belligerent and uncooperative suspect during a traffic stop, and the Eleventh Circuit held the taser use was not excessive force because the situation was "tense and uncertain." (Id. (citing 369 F.3d at 1278).) Further, Defendants assert the alleged excessive force[3] did not violate Walker's clearly established rights because nothing put Defendant Luke on notice that she could not tase Walker after he attempted to punch Defendant May. (Id. at 10-11.)

Plaintiffs do not respond directly to Defendants' arguments regarding Defendant Luke's excessive force or qualified immunity. Instead, they argue Defendant Luke's tase "amounts to a constitutional violation because it occurred during an illegal seizure, and any force used in an illegal seizure is excessive." (Doc. 11, at 5-6 (emphasis omitted) (citing Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022) ("An artificial excessive force

---

[3] Defendants make this argument arguendo, maintaining that Defendant Luke's tase was not excessive force. (Doc. 4, at 10.) However, in the alternative that the Court finds it was excessive force, Defendants argue such force did not violate Walker's clearly established rights to overcome qualified immunity. (Id.)

10

claim . . . [requires] that force was excessive merely because another Fourth Amendment violation occurred.")).)   Plaintiffs claim Defendants' verbal restraint and physical contact are sufficient for a seizure.  (Id. at 6.)   Specifically, Plaintiffs state Defendant May[4] pushed Walker in the car and "create[d] a per se seizure under Hodari D." because he was "not free to leave." (Id. at 7 (citing California v. Hodari D., 499 U.S. 621, 628 (1991)).)   Further, Plaintiffs argue Defendants did not have probable cause based on Walker raising his fist without striking anyone, so the seizure lacked legal justification.  (Id. at 8.) Plaintiffs note Defendants never put Walker in handcuffs or told him he was under arrest as evidence that there was not probable cause but instead, an unreasonable seizure.  (Id.)

Defendants argue there was never a seizure.  (Doc. 15, at 3.) Defendants note that "not every physical touching is a Fourth Amendment violation," but "the touching must be accompanied by an intent to restrain and to apprehend the subject."  (Id. (citing Torres v. Madrid, 592 U.S. 306, 309, 317 (2021)) (internal quotations omitted).)   Defendants argue grabbing Walker's arm and instructing him to stay in his brother-in-law's car did not

---

4 Although Defendant May made physical contact with Walker, Plaintiffs allege liability for Defendant Luke and claim "a participant in an arrest, even if not the arresting officer, may be liable if she knew the arrest lacked any constitutional basis and yet participated in some way."  (Doc. 11, at 7 (citing Wilkerson v. Seymour, 736 F.3d 974, 980 (11th Cir. 2013)) (alterations adopted).)

constitute a seizure because Defendant May lacked an intent to apprehend Walker. (Id.) They claim they did not intend to restrain Walker because they arrived to assist his family, not arrest him, which is why they "asked Walker to stay in the car and to buckle his seatbelt so his family could transport him to the hospital." (Id. at 4.) Defendants state they were not present to arrest Walker, chase him down, shoot at him, or grab him to investigate potential crimes, so their actions objectively did not constitute a seizure. (Id.)

Viewing the facts in the light most favorable to Plaintiffs, the Court finds Defendants did not seize Walker during the encounter. Although Defendants attempted to secure Walker in his brother-in-law's car, they did so to help Walker's family transport him to medical assistance and never handcuffed, arrested, or chased Walker. Plaintiffs fail to allege Defendants intended to seize Walker by giving verbal orders. There was no "intentional acquisition of physical control" by Defendants. Brower v. Cnty. of Inyo, 489 U.S. 593, 596 (1989). Therefore, the Court dismisses Plaintiffs' claims for illegal seizure against Defendants Luke and May.

The Court also finds Defendant Luke's use of force was not excessive. When they first approached Walker, Defendants repeatedly ordered him to stay in the car, put his seat belt on, and physically tried to restrain him with his seatbelt. (Doc. 1,

12

at 5; Doc. 11, at 2.)  Next, Walker pushed himself out of the car, and Defendants claim he raised his fist.  (Doc. 1, at 6; Doc. 11, at 2.)  After Walker exited the car, disobeyed Defendants' orders, and moved toward Defendants, Defendant Luke tased Walker.  (Doc. 1, at 5-6.)  Based on this behavior, a reasonable officer could have believed Walker was threatening violence that justified a single taser use.  Therefore, considering the circumstances of the encounter, the Court finds a reasonable officer at the scene could have found Defendant Luke's first tase to be reasonable.  See Ireland v. Prummell, 53 F.4th 1274, 1300 (11th Cir. 2022) (finding officer's actions of tasing an inmate twice was objectively reasonable because the need for force was apparent, given the inmate failed to comply with verbal commands, kicked, bit, and spit at the officers); but see Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014) ("[A] police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands.").  Plaintiffs concede that Defendant Luke's tase was not excessive but nonetheless a constitutional violation because it occurred during an illegal seizure.  (Doc. 11, at 5.)  In addition to finding Defendant Luke's first tase was not excessive force, the Court finds the encounter was not an illegal seizure, so her use of force remains constitutional.

13

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Count II for illegal seizure under the Fourth Amendment against Defendants Luke and May.  Because Defendant Luke's use of force was not excessive, Defendant Luke did not violate Walker's Fourth Amendment rights through her own use of force.  The Court turns to Plaintiffs' arguments for Defendant Luke's liability for Defendant May's alleged excessive force.

3. Defendant Luke's Liability for Defendant May's Force

Defendants argue Defendant Luke is not liable for her failure to intervene and prevent Defendant May's force because Defendant Luke has qualified immunity and did not have an opportunity to intervene.  (Doc. 4, at 11-14.)  Based on the Parties' arguments, the Court analyzes Defendant May's tases in turn.

a. *Defendant May's First, Second, and Third Tases*

As stated above, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Grider, 618 F.3d at 1254 (citation omitted). "To be clearly established, the contours of a right must be sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Martinez v. City of Pembroke Pines, 648 F. App'x 888, 894 (11th Cir. 2016) (citation and internal quotations omitted).  "The

14

salient question is whether the state of the law at the time of an incident provided fair warning to the defendant that his alleged conduct was unconstitutional." Id. (quoting Tolan v. Cotton, 572 U.S. 650, 656 (2014) (alterations adopted)).

To be clearly established, a legal principle must be "settled law," meaning that it is not merely suggested, but rather "is dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (citations and internal quotation marks omitted). The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted). The pertinent analysis in the Fourth Amendment context is "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he] confronted." Mullenix v. Luna, 577 U.S. 7, 13 (2015) (internal quotations and citations omitted).

### i. Constitutional Violation

Defendants claim Defendant May's "first three tases were appropriate and not excessive." (Doc. 4, at 12.) Defendants state

15

the first tase followed Walker's charge and attempt to punch Defendant May, the second was not alleged to be excessive, and the third followed Walker's failure to follow Defendants' twenty three verbal orders to roll over or stay on the ground. (Id. at 12-13.) Thus, Defendants claim Defendant Luke "cannot be liable for failing to intervene because [Defendant] May's use of force for those three tases did not violate Walker's clearly established rights." (Id. at 13.)

Plaintiffs argue Defendant May's third tase was excessive, and Defendant Luke is liable because she failed to intervene and prevent it.[5] (Doc. 11, at 9.) Plaintiffs cite the Graham v. Connor factors to support their allegations that Defendant May's use of force was excessive.[6] (Id. (citing 490 U.S. 386, 396 (1989); Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002) (Graham dictates unambiguously that the force used by a police officer in carrying out an arrest must be the force used by an officer is reasonable only if it is "reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight")).) Plaintiffs

---

[5] Plaintiffs state they focus on the third and fourth tases "because at that point, repeated tasings had become unconscionable," but maintain that all of Defendant May's uses of force were "excessive due to the illegal seizure." (Doc. 11, at 9.)

[6] Plaintiffs also argue Defendant Luke is liable for Defendant May's use of excessive force because "any force applied to accomplish an illegal detention is excessive." (Doc. 11, at 9.) Because the Court ruled above that Defendants' encounter with Walker did not constitute an illegal seizure under the Fourth Amendment, the Court does not find Defendant May's use of force was excessive solely due to an illegal seizure.

argue all factors favor finding excessive force because there was no crime and thus low severity, and Walker did not pose a material danger or flight risk by the time he had been tased twice because he had collapsed, was in medical distress, and struggled to his feet. (Doc. 11, at 9-10.) Further, Plaintiffs argue Defendant May's third tase was excessive because Defendants "knew additional tasings would likely cause [Walker] serious injury." (Id. at 11.)

The Court finds Plaintiffs stated a claim that Defendant May's third tase was excessive force. Plaintiffs' allegations support Defendant May knew of Walker's hypertension before his third tase because he asked if Walker had medical issues and learned of his hypertension, yet he still inflicted the third tase. (Doc. 1, at 7.) Under the Graham factors, Walker was not suspected of a crime, and there was a minimal risk of flight because Walker was weakened by the preceding tases, but there was a notable risk of danger to the officers because Walker was unrestrained and threatening physical violence. Nonetheless, the Court analyzes whether there was clearly established law regarding Defendant May's use of force to overcome Defendant Luke's qualified immunity.

ii. Clearly Established Law

Defendants alternatively argue that even if such force was excessive, Defendant Luke is entitled to qualified immunity because "it was not clearly established that such force was unconstitutional." (Doc. 4, at 13.) Plaintiffs cite case law to

17

support their argument that Defendant May's first three tases constitute excessive force and were violations of clearly established law. (Doc. 11, at 10-12.) First, they cite Glasscox v. City of Argo where an officer tased a man various times during a traffic stop even though he was not attempting to resist or flee, followed the officer's commands, and held his hands up. (Id. at 11 (citing 903 F.3d 1207, 1216 (11th Cir. 2018), *abrogated by* Gilmore v. Ga. Dep't of Corr., 111 F.4th 1118 (11th Cir. 2024)).) The Glasscox court found excessive use of force and that "no objectively reasonable officer in [the officer's] position could have thought it was lawful to use a taser repeatedly on an arrestee who was not resisting." 903 F.3d at 1216. Second, Plaintiffs cite Wate v. Kubler, where the court denied qualified immunity to an officer who tased a suspect five times although he was handcuffed and had ceased struggling. (Doc. 11, at 11 (citing 839 F.3d 1012, 1015 (11th Cir. 2016)).) Third, Plaintiffs cite Oliver v. Fiorino, where the Eleventh Circuit denied qualified immunity and found the constitutional violation clearly established. (Id. (citing 586 F.3d 898, 906 (11th Cir. 2009)).) In Oliver, the officer tased a man who "was not accused of a crime" and "posed no immediate threat of danger" at least eight times within a minute despite him "screaming in pain while lying on the burning hot pavement." 586 F.3d at 906. Finally, Plaintiffs cite Harper v. Perkins where the court held an officer used clearly established

18

excessive force when he shot an unarmed suspect who was in a tree with his hands raised and allegedly knew the taser would incapacitate him.  (Doc. 11, at 12 (citing 459 F. App'x 822, 827 (11th Cir. 2012)).)

Defendants argue Defendant May's third tase was not a violation of clearly established law, and none of Plaintiffs' cited cases can overcome qualified immunity.  (Doc. 15, at 6-7.) Defendants claim Defendant May's third tase did not violate clearly established law because it followed Walker's refusal of numerous orders to "roll over or stay on the ground," his threat "to punch an EMT, charging at and attempting to punch [Defendant] May, and attempting to kick [Defendant] Luke."  (Id. at 6.)

Based on Plaintiffs' allegations and cited authority, the Court finds it was not clearly established that Defendant May's first three tases were excessive force.  Unlike the subjects in Glasscox and Wate, Walker was resisting, unrestrained, and disobeying Defendants' orders.  903 F.3d at 1216; 839 F.3d at 1022. Moreover, Defendant May's first three tases were in response to Walker's refusal of numerous orders to roll over or stay on the ground, and as Defendants argue, his alleged threat to punch an EMT, alleged attempt to punch Defendant May, and alleged attempt to kick Defendant Luke.  (Doc. 1, at 5-7.)  Walker's behavior differs significantly from the subject in Oliver, who "was not accused of a crime" and "posed no immediate threat of danger," and

19

in Harper, who was unarmed and in a tree with his hands raised. 586 F.3d at 906; 459 F. App'x at 827. Further, Defendant May's first three tases differ in severity from the officer's eight tases in Oliver that resulted in the subject "screaming in pain while lying on the burning hot pavement," and the officer's alleged knowledge that the tase would incapacitate the subject in Harper. 586 F.3d at 906; 459 F. App'x at 827.

Therefore, even assuming Defendant May's first three tases were excessive force, the Court deems the unconstitutionality of force was not clearly established. Further, the Court does not find it was "sufficiently definite that any reasonable official in [Defendant May's] shoes would have understood" that he was violating Walker's Fourth Amendment rights." Martinez, 648 F. App'x at 894. As a result, Defendant May's first three tases did not violate Walker's clearly established rights, and thus, Defendant Luke is entitled to qualified immunity for the first, second, and third tases.

b. *Defendant May's Fourth Tase*

As for Defendant May's fourth tase, Defendants claim Defendant Luke cannot be liable because there was no opportunity to intervene. (Doc. 4, at 13.)

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[] can be held liable for his nonfeasance."

20

Velazquez v. City of Hialeah, 484 F.3d 1340, 1341-42 (11th Cir. 2007) (citations omitted). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citation omitted) (reversing district court's denial of qualified immunity to an officer where there was no constitutional violation in failing to stop another officer from punching plaintiff in the stomach without evidence that he could have anticipated the act); Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citation omitted) (holding "[t]he plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so"). To meet this burden, the plaintiff must offer "facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct." Keating v. City of Miami, 598 F.3d 754, 764 (11th Cir. 2010) (citation omitted).

Defendants claim Defendant Luke could not intervene as evidenced by her shocked reaction, questioning why Defendant May tased Walker a fourth time, and inability to anticipate a fourth tase. (Doc. 4, at 14.) As a result, Defendants argue Plaintiffs' failure to intervene claim against Defendant Luke should be dismissed. (Id.)

Plaintiffs argue Defendant Luke failed to intervene and prevent Defendant May's fourth tase, and thus, is liable. (Doc.

21

11, at 13.)  As noted above, Plaintiffs state Walker had collapsed after three tases, and Defendant Luke recognized Walker was in medical distress and learned he had hypertension.  (Id. at 13-14.) Plaintiffs claim Defendant Luke anticipated Defendant May's fourth tase because she encouraged it.  (Id. at 14-15.)  Plaintiffs also state Defendant Luke only voiced concern for Walker after the fourth tase.  (Id.)  Nonetheless, Plaintiffs maintain Defendant Luke is liable for Defendant May's fourth tase whether she encouraged it or just failed to prevent it.  (Id. at 15.)

Defendants argue Defendant Luke had no opportunity to intervene because the tase lasted two seconds.  (Doc. 15, at 10.) Further, Defendants argue Defendant Luke did not encourage the tasing as evidenced by her shocked reaction.  (Id.)  Defendants highlight that Defendant Luke's statement for Defendant May to "allow the full five second cycle to complete" was referring to the third tase and not encouraging the fourth.  (Id.)  Thus, Defendants claim Defendant Luke is entitled to "qualified immunity for failing to proactively prevent force that had not yet occurred."  (Id. at 12.)

The Court finds Plaintiffs stated a claim for excessive force regarding Defendant May's fourth tase; nonetheless, the Court finds Defendant Luke cannot be liable for failing to intervene based on the unanticipated and abrupt nature of the fourth tase. After Defendant May's third tase, Walker was lying unconscious on

22

the ground, EMTs were offering medical assistance, and he posed no threat. (Doc. 1, at 7-8.) There are no allegations to support finding Defendant Luke anticipated Defendant May's fourth tase and was "in a position to intervene yet failed to do so." Hadley, 526 F.3d at 1331. Plaintiffs fail to allege facts showing Defendant Luke had any indication or knowledge that Defendant May would discharge his taser again. Further, Defendant Luke exclaimed in surprise by Defendant May's fourth tase. (Doc. 1, at 7-8.) The Court is not persuaded that Defendant Luke "encouraged" the fourth tase based on her statement regarding the length of the third tase. (See Doc. 11, at 14.) Plaintiffs' allegations lack a "necessity or real opportunity" for Defendant Luke to intervene. Keating, 598 F.3d at 764. Therefore, Defendant Luke had no reasonable opportunity to prevent Defendant May's fourth tase.

Based on the foregoing, the Court finds Defendant Luke is not liable for failing to intervene with Defendant May's third tase because there was not a clearly established constitutional violation that precluded her qualified immunity. Further, Plaintiffs failed to allege facts to support that Defendant Luke is liable for Defendant May's fourth tase without facts showing there was a sufficient opportunity to prevent it. Accordingly, the Court **DISMISSES** Plaintiffs' Count I for excessive force against Defendant Luke.

23

**B. Battery**

Next, Defendants argue Plaintiffs' state law battery claim against Defendant Luke should be dismissed under both of Plaintiffs' theories: deploying her taser and failing to stop Defendant May's tase.  (Doc. 4, at 17-18.)

1. Defendant Luke's Alleged Battery

Count III alleges state law battery against Defendants, and Defendants argue such claim against Defendant Luke is barred by official immunity.  (Doc. 1, at 15-17; Doc. 4, at 17-20.)  Under Georgia law, "[o]fficial immunity protects county officers and employees from certain state-law claims" when "the claim arises out of the official's performance of a discretionary function." See Keele v. Glynn Cnty., 938 F. Supp. 2d 1270, 1308-09 (S.D. Ga. 2013) (citing Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007)).  However, "[i]t does not protect officials who negligently perform or fail to perform their ministerial functions," or those who "act with actual malice or intent to cause injury in the performance of their official functions."  Id. at 1309 (citations and internal quotation marks omitted).

"In the context of official immunity, actual malice requires a deliberate intention to do wrong," which is "the intent to cause the harm suffered by the plaintiffs."  Selvy v. Morrison, 665 S.E.2d 401, 404-05 (Ga. Ct. App. 2008) (quoting Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999); Murphy v. Bajjani, 647 S.E.2d 54,

24

60 (Ga. 2007)) (internal quotation marks omitted). A deliberate intention to do wrong may be inferred from a police officer's use of "unnecessary and excessive force." Hill v. Mull, No. 504-CV-329, 2006 WL 3022280, at *14 (M.D. Ga. Oct. 23, 2006) (finding jury could infer actual malice when an officer threw a handcuffed arrestee to the ground and kneed him in the back while another officer stood on the arrestee's feet); see also Tabb v. Veazey, No. 105-CV-1642, 2007 WL 951763, at *12 (N.D. Ga. Mar. 28, 2007) ("[I]f an officer uses force intentionally and without justification [then] they acted solely with the tortious actual intent to cause injury." (quoting Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999) (internal quotation marks omitted))). Furthermore, simply alleging a defendant acted with actual malice will not overcome official immunity. Clark v. Chapeau, No. 122-CV-4404, 2023 WL 11767043, at *6 (N.D. Ga. Sept. 29, 2023) ("Although Plaintiff alleges that 'Defendant acted intentionally' while 'motivated by anger' . . . this is not sufficient to plead actual malice."). The plaintiff must also offer factual allegations supporting a finding of actual malice to survive a motion to dismiss. Harper, 459 F. App'x at 828 (finding plaintiff properly alleged actual malice by asserting defendants intentionally tased him, with no justification, knowing he would become incapacitated and likely fall from a tree); see also Lavassani v. City of Canton, 760 F. Supp. 2d 1346, 1369 (N.D. Ga. 2010) (finding actual malice

25

when defendants "expressed their disgust" toward plaintiff, "openly discussed their plans for injuring and arresting [plaintiff]," then "attempted to instigate a physical altercation" before actually arresting and injuring plaintiff).

Defendants argue Defendant Luke is entitled to official immunity as a Georgia public official engaging in a discretionary act. (Doc. 4, at 18-19.) Defendants argue Defendant Luke did not act with actual malice because "she did not fire her taser with the intention to hurt Walker or to break the law" but used her taser to "help Walker." (Id. at 19.) Further, Defendants argue "Defendant Luke spoke calmly to Walker before he became violent" and was "not restricting his freedom via force or lawful order." (Id.)

Plaintiffs argue Defendant Luke is not entitled to official immunity because she acted with actual malice.[7] (Doc. 11, at 17-19.) Plaintiffs alleged there was actual malice where, after grabbing and forcing Walker into his brother-in-law's vehicle, Defendant Luke's taser deployed and struck Walker. (Id. at 16.) Plaintiffs argue their allegations that Defendant Luke "deployed her [t]aser" and was "complicit in [Defendant] May's [t]aser use"

---

[7] Plaintiffs maintain there was an unlawful detention, and as a result, Walker "had a right to resist illegal detention as any force was unlawful." (Doc. 11, at 17.) Further, Plaintiffs claim Walker "was not 'charging' anyone, [but] he was trying to escape unlawful confinement." (Id. at 16.) As stated above, the Court found Plaintiffs failed to allege facts that Defendants seized Walker during the alleged events.

26

are well-pled and sufficient for actual malice. (Id. at 17.) Also, Plaintiffs state Defendant Luke "was fully aware of [Walker's] medical distress" from witnessing him collapse and questioning his medical conditions. (Id. at 18 (emphasis omitted).) Plaintiffs thus argue Defendant Luke is not entitled to official immunity based on her "deliberate intention to cause harm." (Id. at 18-19.)

Defendants maintain in their reply that Defendant Luke's taser use was not excessive to constitute battery because it was after Walker raised his fist and rushed toward Defendant May. (Doc. 15, at 13.) Defendants also state Plaintiffs have not pled facts or shown Defendant Luke acted with a deliberate intent to do a wrongful act or to harm Walker. (Id. at 13-14.)

Both Parties cite A.K.J. v. Roundtree to support their respective official immunity arguments. (Doc. 4, at 24; Doc. 11, at 17-18 (citing No. 123-CV-153, 2025 WL 462514 (S.D. Ga. Feb. 11, 2025)).) In A.K.J., a plaintiff alleged two officers acted with actual malice where one officer tased a fleeing subject and another officer repeatedly slammed the subject's head to the ground. 2025 WL 462514, at *10. The Court found the tasing officer was entitled to official immunity because the circumstances lacked a serious risk of injury, and the facts showed that the other officer was denied official immunity because he used force "intentionally and

27

without justification when he struck [subject's] head after the tackle." Id.

Here, Plaintiffs' allegations fail to allege that Defendant Luke's tasing rises to the level of actual malice. Defendant Luke's use of force is more akin to the tasing officer in A.K.J. who was awarded official immunity, than the officer who used violent force in slamming the subject's head into the ground. Id. Further, Plaintiffs' allegations fail to show Defendant Luke used "unnecessary and excessive force" based on her taser use where she was trying to "help Walker," who needed medical assistance and was unrestrained, threatening violence, and disobeying orders. Hill, 2006 WL 3022280, at *14; Saunders, 766 F.3d at 1265. Plaintiffs allege Defendant Luke acted with actual malice when she tased Walker due to his heart condition, but they fail to allege she knew of Walker's heart condition before using her taser. (Doc. 1, at 17.) Instead, Plaintiffs allege that Defendant Luke learned of Walker's heart condition after Defendant May's second tase and was still complicit during Defendant May's taser use. (Id. at 7.) As such, Plaintiffs' allegations fail to support actual malice at the time of Defendant Luke's taser use. Plaintiffs also lack facts to support Defendant Luke had "a deliberate intention to do wrong" or "the intent to cause the harm suffered" in using her taser. Adams, 520 S.E.2d at 898. Thus, the Court finds Defendant Luke did not act with actual malice and is entitled to official immunity.

28

Finally, because Defendant Luke is afforded official immunity, Plaintiffs' battery claim based on her taser use fails.

2. Defendant Luke's Liability as a Joint Wrongdoer

For the second theory of Plaintiffs' battery claim, Defendants argue Defendant Luke cannot be liable for Defendant May's alleged battery.  (Doc. 4, at 20.)

Plaintiffs bring their state law battery claims pursuant to Georgia's "joint wrongdoer" statute which provides in pertinent part: "In all cases, a person who maliciously procures an injury to be done to another . . . is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury."  O.C.G.A. § 51-12-30.  The word "procure" as used in this statute "does not require the lending of assistance in the actual perpetration of the wrong done by another."  Melton v. Helms, 62 S.E.2d 663, 665 (Ga. Ct. App. 1950) (citations and quotation marks omitted).  Rather, it is enough if the defendant succeeds in procuring another to commit an actionable wrong "through advice, counsel, persuasion, or command," id., or that he "aided and abetted in the injuries received," without regard to the nature of the relationship between the parties.  Brigman v. Brenner, 56 S.E.2d 471, 475 (Ga. 1949); Goddard v. Selman, 192 S.E. 257, 257 (Ga. Ct. App. 1937).

Defendants argue "Plaintiffs cannot plausibly allege that [Defendant] Luke illegally touched Walker by merely alleging that

29

she did not stop [Defendant] May from illegally touching Walker." (Doc. 4, at 20.)  Plaintiffs argue Defendants were joint wrongdoers under O.C.G.A. § 51-12-30 for Defendant May's force.  (Doc. 11, at 19.)  Plaintiffs also argue Defendant Luke is liable for battery because she "aided and abetted Defendant May's taser use . . . when she failed to stop [Defendant] May from tasing [Walker] after [Walker] collapsed in clear medical distress."  (Id.)  Plaintiffs further claim Defendant Luke "encouraged [Defendant] May to use more force once [Walker] was lifeless."  (Id. (emphasis omitted).)  Defendants again state Defendant "Luke did not encourage, incite, aid, abet, command, or order" Defendant May to tase Walker a third or fourth time.  (Doc. 14, at 14.)  Defendants argue, as a result, that Defendant Luke "is not a joint wrongdoer and cannot be liable for [Defendant] May's alleged battery."  (Id. at 14-15.)

Plaintiffs cite Joiner v. Lane to support their argument that Defendant Luke aided and abetted Defendant May's taser use.  (Doc. 11, at 19 (citing 508 S.E.2d 203, 207 (Ga. Ct. App. 1998)).)  In Joiner, the court found a son and father were "classic joint tortfeasor[s]" where the father "counseled or commanded his son to shoot," and they acted "in concert to commit an intentional tortious act."  508 S.E.2d at 207.  Defendants respond that unlike the father and son in Joiner, they did not act in concert to inflict a single divisible injury, and Defendant Luke "did not

counsel or command [Defendant] May to tase Walker." (Doc. 15, at 14.)

The Court finds Plaintiffs failed to state a claim against Defendant Luke for Defendant May's alleged battery as a joint wrongdoer. Defendant Luke's statements during the alleged battery coupled with her presence at the scene do not rise to the level of "aiding and abetting" Defendant May's force. The Court agrees with Defendants' contrast to Joiner where the father told his son "to shoot," whereas here, Defendant Luke never encouraged, commanded, or ordered Defendant May to tase Walker. 508 S.E.2d at 205. Although Plaintiffs argue Defendant Luke "encouraged [Defendant] May to use more force," Plaintiffs' allegations in Count III are devoid of statements encouraging, much less aiding or abetting, Defendant May's taser use. (Doc. 11, at 19; Doc. 1, at 15–17.) Therefore, the Court finds Plaintiffs failed to state a claim for battery against Defendant Luke individually or as a joint wrongdoer and **DISMISSES** Count III against Defendant Luke.

## C. Breach of Ministerial Duty

Count IV alleges breach of ministerial duty against Defendants, who argue such claims should be dismissed either because they are not standalone claims or because Defendants'

31

duties were discretionary instead of ministerial. (Doc. 1, at 17-18; Doc. 4, at 20-23.)

"Under Georgia law, a 'ministerial act' is 'commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" Davis v. Brown, No. 116-CV-00735, 2019 WL 1206431, at *10 (N.D. Ga. Mar. 14, 2019) (quoting Grammens v. Dollar, 697 S.E.2d 775, 777 (Ga. 2010)). A discretionary act, meanwhile, "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Grammens, 697 S.E.2d at 777 (internal quotation marks and citation omitted). "Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." Id. (citations omitted).

Plaintiffs allege Defendants violated BCSO taser policy that prohibits taser use on "passive resisters." (Doc. 1, at 10, 17.) Plaintiffs allege "[t]he BCSO Taser policy states, 'The TASER will not be used against a subject who submits peacefully and complies with lawful commands, [or] is merely expressing verbal disagreement or verbal threats without the ability and/or opportunity to carry out those threats.'" (Id. at 17.)

32

Defendants argue Plaintiffs' claim for breach of ministerial duty fails because the alleged BCSO taser policy imposed discretionary duties, not ministerial duties. (Doc. 4, at 21-22.) Specifically, Defendants argue the BCSO policy requires "judgment and discretion" to determine "when a suspect is submitting peacefully or complying with lawful commands" as opposed to a "simple, absolute, or definite" determination. (Id. at 22.) Defendants cite Bass v. Jones, where the Eleventh Circuit deemed a policy discretionary, where it required an offer to give warnings before using force on an arrestee unless there was a threat to the officer's safety, because the officer had to determine whether a warning was necessary based on whether the arrestee was a threat. (Id. (citing No. 25-10261, 2025 WL 1529315, at *4 (11th Cir. May 29, 2025)).) Defendants contend the policy in Bass "was not simple, absolute, or definite" like the BCSO policy prohibiting taser use against a passive resister. (Id. at 22 (citing 2025 WL 1529315, at *4).)

Plaintiffs argue the BCSO "[t]aser policy creates a ministerial duty because it categorically forbids [t]aser use in certain clearly-defined situations . . . [including] passive resistance." (Doc. 11, at 21 (emphasis omitted).) Plaintiffs argue that if there is passive resistance, then the BCSO officer must not tase the subject. (Id.) Plaintiffs further argue that even though an officer may make an initial determination as to

33

whether a person is a passive resistor, the initial determination is clearly defined, so the duty is ministerial. (Id.)

Plaintiffs draw an analogy between the BCSO policy and clearly defined ministerial duties in Wilson v. Anderson, where a school district's handbook required the school to investigate any time a report of bullying was made, and the BCSO policy. (Id. (citing 913 S.E.2d 813, 817 (Ga. Ct. App. 2025), cert. denied (July 1, 2025)).) Relevant here, the handbook in Wilson stated a definition of "bullying" to be used in making the initial determination. Wilson, 913 S.E.2d at 817. Plaintiffs state, even within ministerial duties, there must be an initial determination as to whether there was a bullying report made like in Wilson and whether someone was a passive resistor like the BCSO policy. (Doc. 11, at 21.) Plaintiffs argue "the line between a clearly defined and broadly defined initial determination [] controls the question of whether a subsequent mandatory duty is discretionary or ministerial." (Id.) Plaintiffs argue "passive resisters" is "a defined term of art in policing and police training." (Id. at 22 n.19.)

Defendants respond that the BCSO policy requires deputies to "examine the facts before them and use their discretion to determine whether a suspect is passively or actively resisting." (Doc. 15, at 16.) Defendants also argue "Plaintiffs have not alleged that 'passive resistance' is a defined term in the taser

34

policy." (Id.) As an alternative, Defendants argue that even if the BCSO taser policy imposed a ministerial duty not to tase a passive resister, Walker was not a passive resister, so they never violated the BCSO policy. (Doc. 4, at 23.) Defendants argue "Walker was not submitting peacefully, complying with lawful commands, merely expressive verbal disagreement, or passively resisting," but was "violent and obstructive." (Id.) As a result, Defendants argue they did not breach the BCSO policy by tasing Walker. (Id.) Plaintiffs respond that Defendants violated the policy because Defendant May's first, third, and fourth taser uses occurred when Walker "was passively resisting at most (the fourth occurred when he was limp and dying)." (Doc. 11, at 23 (emphasis omitted).)

The Court finds Plaintiffs failed to allege that the BCSO policy imposes a ministerial duty on officers. The BCSO policy requires officers determine whether a subject is passively resisting, and in doing so, they must engage in a discretionary act of making this determination.[8] Although Plaintiffs claim the initial determination of whether a subject is passively resisting is clearly defined, Plaintiffs fail to allege such a definition within the BCSO policy unlike the policy in Wilson that contained

---

[8] The Court notes that in deciding Defendant Luke was entitled to official immunity for Plaintiffs' battery claim, the Court already determined Defendants were acting under a discretionary duty instead of a ministerial duty. See Keele, 938 F. Supp. 2d at 1308-09.

35

a definition.   (Doc. 11, at 21); see Grammens, 697 S.E.2d at 778 (finding that a policy created discretionary duties concerning use of protective eyewear because it did not define all the relevant terms and therefore required discretion); Barnett v. Caldwell, 809 S.E.2d 813, 817 (Ga. 2018) (finding that a policy prohibiting teachers from leaving students "unsupervised" did not create a ministerial duty because the teacher had discretion as to what supervision was required); Llewelyn v. Bryant, 825 S.E.2d 614, 616 (Ga. Ct. App. 2019) (holding that a policy requiring the school bus driver to supervise children as they exited buses created discretionary duties because it did not require the execution of specific tasks).   Thus, the Court **DISMISSES** Plaintiffs' claims for breach of ministerial duty against Defendants Luke and May and need not further address whether Defendants violated the BCSO policy.

## D. Intentional Infliction of Emotional Distress

Defendants argue Count V fails to state a claim against Defendant Luke because she is entitled to official immunity.   (Doc. 4, at 23-24.)   Plaintiffs allege Defendant Luke is not entitled to official immunity because she acted with actual malice or with an intent to harm Walker.   (Doc. 1, at 19.)   Defendants again argue Defendant Luke only tased Walker after he charged at Defendant May and tried to punch him.   (Doc. 4, at 24.)   Defendants claim Plaintiffs have failed to allege facts that Defendant Luke intended

36

to hurt Walker to overcome her official immunity. (Id.) Plaintiffs argue Defendant Luke unlawfully seized Walker, tased him, failed to stop Defendant May from tasing Walker multiple times, and "encouraged him to use more force after his body went limp and lifeless." (Doc. 11, at 23.)

For the same reasons stated above, the Court finds Defendant Luke is entitled to official immunity because her use of force was not a constitutional violation, and Plaintiffs fail to allege actual malice. The Court also reiterates that Plaintiffs failed to state facts to sufficiently allege Defendants seized Walker, so there was no illegal seizure. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress against Defendant Luke is **GRANTED**.

## E. Expenses of Litigation and Punitive Damages

Defendants argue Count VI for attorney's fees and Count VII for punitive damages are both derivative claims, so their survival depends on the success of the remaining claims. (Doc. 4, at 24.) Thus, Defendants request the Court dismiss Counts VI and VII against Defendant Luke to the extent the Court dismisses the substantive claims. (Id.) Plaintiffs did not respond.

Georgia state law claims for punitive damages under O.C.G.A § 51-12-5.1 and attorney's fees are derivative of Georgia tort law claims and thus require an underlying claim. See Lilliston v. Regions Bank, 653 S.E.2d 306, 311 (Ga. Ct. App. 2007) (explaining

37

that dismissal of underlying substantive claims warrants dismissal of derivative claims for punitive damages under O.C.G.A. § 51-12-5.1); United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602 (Ga. 1996) (explaining that a claim for attorney's fees under O.C.G.A. § 13-6-11 requires relief on an underlying claim); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004) (per curiam) (establishing that a claim for attorney's fees under O.C.G.A. § 13-6-11 requires an underlying claim). Here, the Court dismissed Counts I through V against Defendant Luke. As such, Counts VI and VII against Defendant Luke fail as a matter of law and are **DISMISSED**. See Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) (finding plaintiff's Georgia law claims for punitive damages and attorney's fees fail as a matter of law where the district court dismissed all of plaintiff's substantive state law claims).

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 4) is **GRANTED**. Counts I, III, V, VI, and VII as to Defendant Luke and Counts II and IV as to Defendants Luke and May are **DISMISSED**. Plaintiffs' remaining claims for excessive force, battery, intentional infliction of emotional distress, expenses of litigation, and punitive damages against

Defendant May shall proceed.   The Clerk **SHALL TERMINATE** Defendant Luke as a Party to this action.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of March, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA