**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA AUGUSTA DIVISION**

| | | |
|---|---|---|
| RUBY WALKER WADLEY and JACEE WALKER, in their individual capacities and as anticipated administrators of the estate of Freddie Walker,<br><br>Plaintiffs,<br><br>v.<br><br>TYLER MAY and ZAKIA LUKE,<br><br>Defendants. | * * * * * * * * * * * * * * | CV 125-172 |

**O R D E R**

Before the Court are Plaintiffs' motion for reconsideration (Doc. 17) and motion for interlocutory appeal (Doc. 18). For the following reasons, Plaintiffs' motion for reconsideration is **GRANTED IN PART AND DENIED IN PART** and motion for interlocutory appeal is **DENIED**.

## I. BACKGROUND

The factual and procedural background of this case is outlined in the Court's March 16, 2026 Order (the "Order"). (Doc. 16, at 1-5.) The Order granted Defendants' motion to dismiss and dismissed Counts I, III, V, VI, and VII as to Defendant Luke and Counts II and IV as to Defendants Luke and May. (Id. at 38-39.)

On March 19, 2026, Plaintiffs filed a motion for reconsideration and motion for interlocutory appeal. (Docs. 17, 18.) On April 2, 2026, Defendants responded. (Docs. 22, 23.) The motions are ripe for the Court's review.

## II. MOTION FOR RECONSIDERATION

"Reconsideration of a previous order is an extraordinary remedy, to be employed sparingly." Armbuster v. Rosenbloom, No. 1:15-cv-114, 2016 WL 1441467, at *1 (S.D. Ga. Apr. 11, 2016) (citation and internal quotation marks omitted); see also Spellman v. Haley, No. 97-T-640-N, 2004 WL 866837, at *2 (M.D. Ala. Feb. 22, 2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling."). Because such remedy "is not an appeal, . . . it is improper on a motion for reconsideration to ask the Court to rethink what the Court has already thought through - rightly or wrongly." Armbuster, 2016 WL 1441467, at *1 (citation and internal quotation marks omitted). "[A]dditional facts and arguments that should have been raised in the first instance are not appropriate grounds for a motion for reconsideration." Gougler v. Sirius Prods., Inc., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005) (citation omitted); see also Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of a motion for reconsideration to afford a litigant "two bites at the apple");

Rossi v. Troy State Univ., 330 F. Supp. 2d 1240, 1249-50 (M.D. Ala. 2002) (denying motion for reconsideration when plaintiff failed to submit relevant evidence prior to entry of original order and failed to show good cause for the omission). Furthermore, "the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citation omitted). And, ultimately, "the decision to grant a motion for reconsideration is committed to the sound discretion of the district judge." Townsend v. Gray, 505 F. App'x 916, 917 (11th Cir. 2013) (citation and internal quotation marks omitted).

A court may reconsider a final order or judgment under Federal Rule of Civil Procedure 59 or 60. Brown v. Synovus Fin. Corp., 783 F. App'x 923, 931 (11th Cir. 2019) (citation omitted). Plaintiffs fail to note under which rule they brings this motion; thus, it is up to the Court to determine. Generally, "if a motion is filed within twenty-eight days of judgment, the motion should be analyzed under Rule 59 framework." Brown v. Spells, No. 7:11-cv-91, 2011 WL 4543905, at *1 (M.D. Ga. Sept. 30, 2011); accord Mahone v. Ray, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003) (analyzing Rule 59 under former ten-day deadline). Plaintiffs filed their motion less than twenty-eight days after entry of the Order; thus, the Court analyzes Plaintiffs' motion under Rule 59(e).

Reconsideration under Rule 59(e) is justified only when there is: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." Schiefer v. United States, No. CV206-206, 2007 WL 2071264, at *2 (S.D. Ga. July 19, 2007). Rule 59(e) "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted).

Plaintiffs request reconsideration of the Court's rulings that first, Defendants May and Luke did not effect a Fourth Amendment seizure; and second, Deputy May's third taser deployment did not violate clearly established law. (Doc. 17, at 1.) Plaintiffs contend "[r]econsideration is warranted because the seizure ruling rests on a mistaken legal premise, and because intervening Eleventh Circuit authority confirms that the third taser deployment falls within the obvious-clarity exception to qualified immunity." (Id.)

**A. Deputies May and Luke's Alleged Fourth Amendment Seizure**

The Court previously held that Defendants' actions did not constitute a seizure and dismissed Plaintiffs' claim for excessive force during an illegal seizure in violation of the Fourth Amendment. (Doc. 16, at 12.) The Court found Defendants were helping Walker's family transport him to medical assistance, so

their attempt to secure him in his brother-in-law's car was not a seizure. (Id.) Plaintiffs request the Court reconsider this ruling and examine Defendants' intent objectively. (Doc. 17, at 2.) Instead of considering why Defendants restrained Walker or whether they eventually intended to arrest him, Plaintiffs ask the Court to consider whether Defendants "intentionally applied physical force to restrain his movement." (Id.) The Court considers whether such physical force by Defendants constitutes a seizure.

A Fourth Amendment "seizure requires the use of force with intent to restrain." Torres v. Madrid, 592 U.S. 306, 317 (2021) (emphasis omitted). Although "a mere touch can be enough for a seizure," not every physical contact between law enforcement and a member of the public amounts to a Fourth Amendment seizure. Id. In assessing the intent to restrain, "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain." Id. (citation omitted). Further, the seizure does not depend on the "subjective perceptions of the seized person" or the "subjective motivations of police officers." Id. (citation omitted).

Plaintiffs argue there was a seizure based on the facts alleged in the complaint. (Doc. 17, at 2.) Plaintiffs argue that Defendant May physically grabbed Walker's arm, forced him back into the car, tried to fasten his seatbelt, and told him, "nah

we're gonna stay in the car, Mr. Freddie" while repeatedly ordering Walker to remain in the vehicle and put on his seatbelt. (Id.) Plaintiffs argue that such allegations describe "physical force and commands deliberately used to keep Mr. Walker where the deputies wanted him." (Id.) Even if Defendants acted for benevolent reasons, Plaintiffs argue the question is whether they intentionally restrained a person's freedom of movement. (Id.) Defendants argue that they were trying to help Walker and his family get him medical assistance as any ordinary public official would do. (Doc. 22, at 2-3.) Defendants further argue that the cases Plaintiffs cite are easily distinguishable based on the nature of the alleged seizure. (Id.)

After reviewing the Plaintiffs' arguments as to the objective analysis, the Court re-examines the question of whether a seizure occurred with extra emphasis on the objective aspects that may have been inadvertently underemphasized originally. After Defendants arrived at the scene, they walked toward Walker and the EMTs, who were trying to secure him in his brother-in-law's vehicle. (Doc. 1, at 5.) While Walker sat in the vehicle's backseat and received assistance from the EMTs, Defendant Luke said "Mr. Freddie, put your seatbelt on for me darlin'." (Doc. 5, Ex. A, at 00:51 to 00:54.) Next, Walker lunged out of the car at an EMT, stood up, held his left hand at the officer's chest, and raised his right fist in a punching position. (Id. at 00:57 to

1:05.) Defendant May intervened and stepped in between Walker and the EMT while stating, "Don't do that. About to make it a lot worse on yourself, my guy. Go ahead and get back in the car, so they can go help you." (Id. at 1:07 to 1:11.) At this point, Plaintiffs argue that Defendant May was using physical force to push Walker back in the car and secure his seatbelt around him.[1] (Id. at 1:07 to 1:11; Doc. 17, at 2.)

Based on the Parties' arguments, the Court now finds that a seizure took place. First, Defendant May used physical force by either pushing Walker into the car or attempting to buckle him in his seatbelt. Even a mere touching satisfies the use of force requirement, so whether Defendant May was pushing Walker into the car, wrapping a seatbelt around him, or both is sufficient use of force for a seizure. Torres, 592 U.S. at 317 ("While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain.") Second, Defendant May had an objective intent to restrain Walker because he was trying to put him in his brother-in-law's car, attempting to secure his seatbelt around him, and blocking him from exiting the car. Although Defendant May was not restraining Walker in a police car

[1] Due to the angle of the camera, the bodycam footage does not clearly show Defendant May touching Walker or pushing him into the car. However, the footage shows him attempt to secure the seatbelt on Walker, which is indirect physical force. See Watkins v. Davis, 156 F.4th 1084, 1100 (11th Cir. 2025) (the use of force "may be indirect—through an object like a mace or a bullet") (citation omitted). Thus, Defendant May used force either by attempting to buckle the seatbelt or by pushing Walker into the car as alleged. (See Doc. 1, at 5.)

with handcuffs or as a suspect for a crime, Defendant May intended to secure him in a vehicle and had the objective intent to restrain. The fact that Defendant May was intending to get Walker to medical care does not preclude the seizure analysis. Thus, the Court finds that when Defendant May used physical force in attempt to secure Walker in the vehicle, a seizure began. See Watkins, 156 F.4th at 1102 (finding officers seized plaintiff by physical force and objectively manifested an intent to restrain when they intentionally shot her vehicle while she was driving).

Now that the Court found there was a seizure, it must consider whether the seizure was lawful. Plaintiffs' claim for excessive force during an illegal seizure shall remain dismissed unless the Court finds the seizure was, in fact, illegal. The Eleventh Circuit ruled that an artificial excessive force claim applies where "an officer's use of force is excessive only because an arrest was not supported by probable cause." Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022). Plaintiffs allege there was no legal justification to restrain Walker. (Doc. 1, at 13.) Defendants argue they had the right to seize Walker when they witnessed him attempt to punch an EMT. (Doc. 4, at 17.) Plaintiffs argue Walker was entitled to use proportionate force during an unlawful seizure, and raising his fist was proportionate to compelled confinement. (Doc. 11, at 8.) Defendants argue Walker

was not initially seized when he attempted to punch the EMT, so he did not have the right to violently resist. (Doc. 15, at 6.)

The Court finds that Defendants had probable cause to initiate the seizure, and thus, it was not unlawful. Defendants did not use force with intent to restrain Walker until Walker lunged, raised his fist at the EMT, and Defendant May stepped in between them. (Doc. 5, Ex. A, at 00:57 to 01:16.) At that moment, Defendants had probable cause to use physical force and initiate a seizure based on Walker's raised fist, and a seizure ensued when Defendant May physically touched him. Plaintiffs argued that Walker used proportional force by raising his fist "in response to his unlawful seizure by the EMTs and deputies." (Doc. 11, at 8.) However, Defendants had not yet used force, so there was no seizure when Walker raised his fist the first time. Because Walker raised his fist at the EMT before the seizure, it was not in response to an illegal seizure by Defendants. As such, it provided probable cause to conduct a seizure and attempt to restrain him in his brother-in-law's vehicle. Although Plaintiffs argue any force used in an illegal seizure is excessive, the Court finds that Defendants' seizure of Walker was supported by probable cause. Thus, because there was probable cause, the seizure was lawful and Defendants' use of force during the seizure does not satisfy an artificial excessive force claim.

For the sake of completeness, the Court addresses whether Defendants had probable cause throughout the seizure.[2] Plaintiffs' complaint alleges that each of Defendants' "use of force was unlawful and violated [Walker's] Fourth Amendment rights." (Doc. 1, at 14.) Defendants argue they had the authority to seize Walker because he attempted to punch an EMT and then Defendant May. (Doc. 4, at 17.) After Walker lunged and raised his fist at the EMT, the Court found there was probable cause for Defendants' force of restraining him in the car. (See Doc. 5, Ex. A, at 00:57 to 02:15.) Defendants continued the seizure, still intending for Walker to be restrained in his brother-in-law's vehicle to get medical assistance. (Doc. 5, Ex. B, at 08:45 to 09:24.) Specifically, after Defendant May pushed Walker back in the car and tried to secure his seatbelt, Walker forcefully lunged at Defendant May, pushed to get to his feet, and raised his fist again, which prompted Defendants to discharge their tasers. (Doc. 4, Ex. B, at 08:45 to 09:03.) At this point, Defendants were kindly asking Walker to roll over on the ground, so they could handcuff him due to his noncompliant and threatening behavior and have him transported for medical care. (Id. at 09:07 to 09:17.) However, Walker did not roll over as they asked and then raised his knee in attempt to kick Defendant Luke, prompting Defendant

[2] The Court limits its analysis to the first three tases because the Order did not address the constitutionality of Defendant May's fourth tase. (See Doc. 16, at 23.)

May to tase him a second time. (Id. at 09:17 to 09:24.) Thus, the Court finds Defendants had probable cause and used objectively reasonable force based on Walker's refusal of orders, violent motions, and mental health condition. (Id.) Each time Defendants increased their force, the force was proportional to Walker's continuous resistance, noncompliance, and attempts to punch and kick Defendants. (Id.) Importantly, Walker was a large adult male enduring a mental health crisis, so considering this history in conjunction with his noncompliant and violent behavior, Defendants' use of force during the seizure was objectively reasonable under the circumstances. Thus, the Court finds that Defendants had probable cause to initiate the seizure and maintained probable cause as they increased their amount of force.

Accordingly, the Court finds there was a seizure and **GRANTS** Plaintiffs' motion for reconsideration of its prior ruling that Defendants did not seize Walker. However, Count II for illegal seizure under the Fourth Amendment against Defendants Luke and May remains dismissed due to the fact the Defendants had probable cause to initiate the seizure.

**B. Deputy May's Third Taser Deployment**

The Court previously ruled that Plaintiffs sufficiently alleged Defendant May's third tase was excessive force. (Doc. 16, at 14-17.) However, in ruling that Defendant Luke was entitled to qualified immunity for failing to stop Defendant May's third tase,

the Court found that Defendant May's third tase did not violate clearly established constitutional rights of which a reasonable officer would have known.[3] (Id. at 17-20.) Now, Plaintiffs request the Court reconsider its ruling that Defendant May's third tase did not violate clearly established law. (Doc. 17, at 4.)

To be clearly established, a legal principle must be "settled law," meaning that it is not merely suggested, but rather "is dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (citations and internal quotation marks omitted). The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted). The pertinent analysis in the Fourth Amendment context is "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he]

[3] Plaintiffs request that the Court's ruling that Defendant May's third tase was not clearly established as unconstitutional be limited to Defendant Luke's liability for failure to intervene and not extend to Defendant May's liability for excessive force. (Doc. 17, at 4.) The Court finds no reason to limit its ruling. Thus, both Defendants are entitled to qualified immunity as to Defendant May's third tase.

confronted." Mullenix v. Luna, 577 U.S. 7, 13 (2015) (internal quotations and citations omitted). The Court previously ruled that none of the three ways listed above apply to the alleged facts, so Defendant Luke was entitled to qualified immunity for Defendant May's third taser use. (Doc. 16, at 20.)

Plaintiffs argue that the Court should reconsider its ruling under the obvious clarity doctrine and in light of the Eleventh Circuit's intervening reasoning in Edwards v. Grubbs, 169 F.4th 1261 (11th Cir. 2026), *superseded by*, 179 F.4th 909 (11th Cir. 2026). (Doc. 17, at 4.) On June 30, 2026, the Eleventh Circuit published a superseding Opinion in Edwards that substitutes the prior opinion and omits the obvious clarity doctrine analysis. Edwards v. Grubbs, 179 F.4th 927 (concluding that the officer had notice that his tasing constituted excessive force under the circumstances, and thus, "not address[ing] the 'obvious clarity' method"). In Edwards, an officer was chasing a fleeing suspect who was unarmed and ignoring commands to stop. Id. at 919. The officer tased him when he was running away, causing him to fall down a 30-foot embankment with a 30-degrees slope and hit his head on a utility box. Id. The Eleventh Circuit concluded it was clearly established that the officer could not tase "an unarmed panhandling suspect fleeing on foot who had not threatened anyone, was not a danger, and was in a vulnerable position – i.e., running down a steep embankment leading to a highway – that created a

danger of death or serious bodily harm" based on "materially similar precedent." Edwards, 179 F.4th at 927. (citing Bradley v. Benton, 10 F.4th 1232, 1243 (11th Cir. 2021)). Although the Eleventh Circuit omitted the obvious clarity doctrine analysis from Plaintiffs' cited case, the Court nonetheless examines the Parties' arguments.

Plaintiffs argue the obvious clarity doctrine "asks whether the force used was so plainly disproportionate and dangerous that any reasonable officer would have understood it to be unlawful." (Doc. 17, at 4-5.) Plaintiffs argue that by Defendant May's third tase, Walker had collapsed in distress and was medically vulnerable. (Id. at 6.) Plaintiffs also argue Defendants learned he suffered from hypertension, so the third tase was used on a "medically compromised man in acute distress whose known condition made further taser use foreseeably catastrophic." (Id.) They assert that "a reasonable officer would have understood that deploying an incapacitating weapon in those circumstances created an obvious and intolerable risk of serious harm." (Id.) Finally, Plaintiffs argue the absence of materially identical precedent does not entitle the officer to qualified immunity where taser use is plainly unreasonable based on the person's condition, level of threat, and foreseeable consequences of force. (Id.)

Defendants argue Edwards reiterates that using deadly force against non-dangerous fleeing suspects is clearly

unconstitutional. (Doc. 22, at 4.) However, they argue it was not clearly established that Defendant May's third tase was deadly force, and thus, unconstitutional. (Id.) Defendants argue that the foreseeability of harm from tasing someone with hypertension is not the same as the foreseeability of harm of tasing someone from an elevated position like in Edwards. (Id.)

The Court stands by its previous finding that it was not clearly established that Defendant May would violate the constitution when he tased Walker a third time. The issue Plaintiffs urge the Court to reconsider is whether Defendant May's third taser use, after learning Walker had hypertension, was a clearly established, Fourth Amendment violation of obvious clarity. The Court finds that it is not.

The Eleventh Circuit applied the obvious clarity doctrine in Bradley. 10 F.4th 1232 (11th Cir. 2021). In Bradley, an officer was chasing a fleeing man after a traffic stop and tased him while he was on top of an eight-foot wall, causing him to become temporarily incapacitated, fall, and die. Id. at 1237. The Eleventh Circuit held that the officer used deadly force in firing a taser while the man was on an eight-foot wall turns non-lethal force into lethal force based on the foreseeable risk of serious injury or death. Id. at 1244. Further, Bradley held no reasonable officer would conclude that such use of force was warranted under

these circumstances where he was not threatening, harmful, or suspected of committing a violent crime. Id.

The Court finds the fact that Defendant May learned that Walker had hypertension before using his taser a third time does not turn non-lethal force into lethal force. Defendant May did not "use[] force that he knew would create a substantial risk of causing death or serious bodily harm." Id. at 1243 (citation omitted). Although Walker was not suspected of a violent crime, he was threatening physical violence during a mental health crisis and refusing to cooperate with Defendants' instructions. Under these circumstances, no reasonable jury could find that Defendant May's violation of Walker's Fourth Amendment rights was clearly established as one of obvious clarity.

Thus, the Court **DENIES** Plaintiffs' motion for reconsideration as to Defendant May's third taser deployment. Count I for excessive force against Defendant Luke remains dismissed and Count I for excessive force against Defendant May as to his fourth taser use remains pending.

## III. MOTION FOR INTERLOCUTORY APPEAL

Plaintiffs seek leave for certification of the Order for interlocutory review pursuant to 28 U.S.C. § 1292(b). (Doc. 18, at 1.) Defendants did not respond to this request.

**A. Legal Standard**

For the Court to authorize certification under section 1292(b), Plaintiffs have the burden to show the Court that the relevant order "involves [1] a controlling question of law[,] [2] as to which there is substantial ground for difference of opinion[,] and [3] that an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

First, a controlling question of law is one that is both controlling and purely legal. Javier Rivera v. Sellers, No. CV 113-161, 2019 WL 2583634, at *3 (S.D. Ga. June 21, 2019). A question is controlling when it is "outcome determinative." E.A. Renfroe & Co. v. Rigsby, No. 06-AR-1752-S, 2008 WL 11375424, at *2 (N.D. Ala. Jan. 17, 2008). Compare Scoggins v. Floyd Healthcare Mgmt., No. 4:14-CV-0274-HLM-WEJ, 2016 WL 11544903, at *3 (N.D. Ga. Apr. 4, 2016) (discovery-related issue not controlling because "certainly not dispositive"), with S.R. v. United States, 555 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008) (controlling because the availability of equitable tolling "is wholly dispositive as to the viability of [plaintiff's] claims"). Distinct from "a question of fact or matter for the discretion of the trial court," a purely legal question is "more of an abstract legal issue" that "can [be] decide[d] quickly and cleanly without having to study the record"; it does not require the "application of settled law to fact."

McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1258 (11th Cir. 2004) (citations omitted).

Second, a difference of opinion is sufficient when "there is substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." Id. at 1259. For example, there is substantial dispute when there is a circuit split over a question of law that the Eleventh Circuit has not addressed. Abner v. U.S. Pipe & Foundry, Co., No. 2:15-CV-02040, 2018 WL 3804188, at *2 (N.D. Ala. Feb. 21, 2018). However, "[n]either the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion." Flint Riverkeeper, Inc. v. S. Mills, Inc., 261 F. Supp. 3d 1345, 1347 (M.D. Ga. 2017) (citation omitted).

Third, an immediate appeal materially advances the ultimate termination of the litigation when the court of appeals' decision "would serve to avoid a trial or otherwise substantially shorten the litigation." McFarlin, 381 F.3d at 1259 (citations omitted) (finding appeal immaterial because it would only resolve one of seven issues leaving open possibility that review may be appropriate in future cases where not all claims would be resolved); accord Cline v. Advanced Neuromodulation Sys., Inc., No. 1:11-CV-4064, 2014 WL 11517833, at *2 (N.D. Ga. Apr. 15, 2014) ("[T]he resolution of these issues would not serve to avoid trial

or otherwise substantially shorten the litigation because [p]laintiff's parallel negligent manufacturing claim is still viable . . . ."). Where the appeal would not dispose of the entire case, courts "weigh the disruptive effect of an immediate appeal on the . . . proceedings against the probability that resources will be wasted in allowing those proceedings to go forward." In re Pac. Forest Prods. Corp. v. Freeman, 335 B.R. 910, 924 (S.D. Fla. 2005) (Although "numerous other issues remain to be tried," an "immediate appeal would hasten the *ultimate* disposition of this case. The discovery period . . . is still open[] and trial is scheduled [to occur in six months].").

The Court also notes that section 1292(b) certification is "an extraordinary measure, which is permitted only in exceptional circumstances." Cline, 2014 WL 11517833, at *1 (citing McFarlin, 381 F.3d at 1256). "Because permitting piecemeal appeals is bad policy, permitting liberal use of [section] 1292(b) interlocutory appeals is bad policy." McFarlin, 381 F.3d at 1259.

**B. Discussion**

Plaintiffs request the Court grant interlocutory review of "two discrete questions of law that are controlling, substantially contested, and materially case-shaping":

> (1) Whether officers effect a Fourth Amendment seizure when they intentionally apply physical force and commands to keep a person in a vehicle for transport to medical care, without an intent to arrest or pursue a criminal investigation; and

> (2) Whether the Eleventh Circuit's obvious-clarity doctrine clearly establishes that taser use is unconstitutional where officers deploy it against a person whose known medical vulnerability makes catastrophic harm foreseeable, even if the person is unrestrained and not fully compliant.

(Doc. 18, at 1-2.)

Plaintiffs state that "immediate review also will materially advance the ultimate termination of this case because the present Order fractures the litigation in a way that risks duplicative medical causation discovery, expert work, and multiple trials on overlapping uses of force and overlapping causation theories." (Id. at 2 (citing McFarlin, 381 F.3d at 1260).) The Court examines each question in turn.

1. Fourth Amendment Seizure

Plaintiffs argue "the Fourth Amendment seizure inquiry depends on an intent to arrest or criminally detain, or instead on an objective intent to restrain a person's movement through force intentionally applied" is both a controlling and contestable legal question. (Id. at 5.) Further, Plaintiffs argue substantial grounds for disagreement exist based on whether the inquiry is framed around an officer's motive or in objective terms focused on restraint. (Id.) Finally, Plaintiffs argue the disagreement has significance beyond the case because it has a recurring category of law-enforcement encounters involving welfare checks, mental-health crises, and medical interventions. (Id.)

The Court granted Plaintiffs' motion for reconsideration as to whether Defendants seized Walker. The Court changed its prior ruling and held that a seizure occurred, but it was a lawful seizure because Defendants had probable cause. The Court now analyzes the seizure in objective terms focused on restraint instead of the officer's motive. Because the Eleventh Circuit's review of this issue would not alter the Court's decision that there was a seizure, the issue is not controlling and would not materially advance this litigation. Thus, this question is inappropriate for an interlocutory appeal.

2. Obvious Clarity Doctrine

Next, Plaintiffs argue the question of whether obvious clarity applies where an "officer[] use[s] an incapacitating weapon against a person whose known vulnerability makes grave harm foreseeable, even if that person is not fully subdued" is a controlling legal question with substantial reason for disagreement. (Id. at 5-6.) Plaintiffs further argue this issue concerns the doctrine's reach as opposed to applying the alleged facts to the law. (Id. at 6.) Plaintiffs argue that the issue substantially affects the course of this case with regard to the factual and medical scope of discovery. (Id.)

The Court finds the proposed question fails to present a controlling a question of law. The question of whether the obvious clarity doctrine applies where an officer tases a person with a

known vulnerability is factually dependent and not purely legal. Thus, it does not present a "truly exceptional case[]" warranting Eleventh Circuit review. Daker v. Owens, No. 6:14-CV-47, 2022 WL 3287919, at *4 (S.D. Ga. Aug. 11, 2022) (citation omitted). Moreover, Eleventh Circuit review would not advance the ultimate termination of the litigation because a contravening decision would broaden the scope of discovery and delay the litigation. (See Doc. 18, at 6.) Such an appeal does not support resolving this case before trial or substantially shortening the litigation. McFarlin, 381 F.3d at 1259. Further, "interlocutory review is not intended where there exists a 'mere question as to the correctness of the ruling.'" Gold Cross EMS, Inc. v. Children's Hosp. of Ala., 108 F. Supp. 3d 1376, 1385 (S.D. Ga. June 1, 2015) (citation omitted), aff'd, 648 F. App'x 976 (11th Cir. 2016). Because the Court has decided this question on a factual basis twice now, the Court need not grant interlocutory review. Accordingly, Plaintiffs' motion for interlocutory appeal (Doc. 18) is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion for reconsideration (Doc. 17) is **GRANTED IN PART AND DENIED IN PART** and motion for interlocutory (Doc. 18) appeal is **DENIED**. Counts I, III, V, VI, and VII as to Defendant Luke and Counts II and IV as to Defendants Luke and May remain dismissed. This action

shall remain pending as to Counts I, III, V, VI, and VII against Defendant May.

**ORDER ENTERED** at Augusta, Georgia, this 1st day of September, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA